IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Robert Gierwatowski, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    - against -<br><br>Trader Joe's Company,<br><br>      Defendant | Case No. 1:21-cv-01119<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  Trader Joe's Company ("defendant") manufactures, distributes, markets, labels and sells cereal consisting of oat clusters and almonds ("Almond Granola") purporting to have a characterizing or main flavor of vanilla. ("Product").

2.  The front label declares the characterizing flavor as "Vanilla Flavored With Other Natural Flavors."



3. The non-vanilla flavors are described as "Other Natural Flavors" even though they are artificial flavors.[1] 21 C.F.R. § 101.22(i)(2); 21 C.F.R. § 101.22(c).



---

[1] The FDCA and its regulations are incorporated and adopted in the Illinois Food, Drug and Cosmetic Act ("IFDCA") and its parallel regulations. See 410 ILCS 620/1, et seq.

A. Consumers Seek Natural Flavors

4. Natural flavors are from natural sources like fruits and vegetables and made through natural processes such as distillation, roasting, heating, enzymolysis or fermentation. 21 C.F.R. § 101.22(a)(3).

5. Artificial flavors are made from synthetic sources or through artificial processes. 21 C.F.R. § 101.22(a)(1) (all methods other than those permitted for natural flavors).

6. Defendant knows that consumers prefer foods with natural and not artificial flavors.

7. At least seven out of ten consumers avoid artificial flavors because they believe the synthetic ingredients and harsh, non-natural processes are associated with detrimental health effects and lower nutritional values.[2]

B. Vanilla

8. Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

9. The vanilla orchid produces a fruit pod, the vanilla bean which is the raw material for vanilla flavorings.

10. The vanilla bean is heated in the sun for weeks, soaked in alcohol and its flavor constituents extracted (vanilla extract).

11. Vanillin (3-methoxy-4-hydroxybenzaldehyde) is the major component of natural vanilla flavor and is responsible for roughly one-third of the flavor and aroma.

12. Vanillin is found in the form of its β-D-glucoside (glucovanillin) in green vanilla beans.

---

[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

13. The curing process, including the hydrolysis of its β-D-glucoside, leads to the release of vanillin from glucovanillin, at concentrations of 1-4% of dry weight of cured beans.

14. Vanilla's unique flavor is due to the hundreds of odor-active compounds besides vanillin, such as acids, ethers, lactones, alcohols, acetals, phenols, esters and carbonyls.

15. Methyl cinnamate and cinnamyl alcohol provide cinnamon notes.

16. P-cresol contributes flavor notes described as woody and spicy.

17. Acetovanillone provides a sweet, honey taste.

18. P-hydroxybenzoic acid, 4-methoxybenzyl alcohol (p-anisyl alcohol) and vanillic acid are significant phenolic compounds which contribute to vanilla's aroma.

II. Two Types of Vanillin – Defendant Uses the Artificial Kind

19. Since the isolation of vanillin from vanilla in the mid-1800s, there have been two types of vanillin.

20. The first is natural vanillin from the vanilla plant.

21. Natural vanillin is not isolated commercially since it is part of vanilla extract.

22. The second is artificial vanillin from sources including guaiacol (coal tar or petroleum), eugenol (clove oil), ferulic acid and lignin (tree pulp), made through artificial processes. 21 C.F.R.§ 182.60 (listing vanillin as a "Synthetic flavoring substances and adjuvants.").

    i. <u>Vanillin from Guaiacol</u>

23. Guaiacol is the source of 85% of vanillin.

24. It is obtained from the synthetic petrochemicals, benzene and propylene, whose industrial source is petroleum.

25. Converting guaiacol to vanillin entails condensation with glyoxylic acid.

26. The processes include chemical reactions such as decarboxylation and aromatic substitution.

27. Vanillin from guaiacol is an artificial flavor because it is from an artificial source and undergoes artificial processes.

    ii.    <u>Vanillin from Lignin[3]</u>

28. Vanillin is also derived from lignin, present in sulfite wastes of the wood pulp industry.

29. These sulfite wastes contain chemicals used in the processing of wood pulp and are therefore not considered a natural source.

30. Lignin is difficult to degrade by natural means and must be broken down either with sodium hydroxide, nickel or calcium hydroxide and simultaneously oxidized in the air in the presence of these chemical catalysts.

31. When these chemical reactions are completed, the solid wastes and vanillin are removed from the acidified solution with a non-natural solvent, e.g., butanol or benzene, and reextracted with a sodium hydrogen sulfite solution.

32. The vanillin is subjected to reacidification with sulfuric acid followed by vacuum distillation, and several recrystallization cycles before it is finished.

33. Vanillin from lignin is an artificial flavor because its starting material is sulfite waste containing chemicals from the processing of wood pulp and are therefore not a natural source.

34. Vanillin from lignin is an artificial flavor because it must be subjected to artificial processes in being converted to vanillin.

---

[3] Lignin is a class of complex organic polymers that form key structural materials in the support tissues of most plants.

      iii.    <u>Vanillin from Eugenol</u>

35. Eugenol, the major constituent of clove oil, is a source of vanillin.

36. The first method of converting eugenol to vanillin requires isomerization of eugenol to isoeugenol under alkaline conditions, followed by side-chain cleavage to vanillin and two-carbon moiety under acidic conditions.

37. The second method of converting eugenol to vanillin involves the intermediary of coniferyl alcohol which is oxidized to ferulic acid.

38. The ferulic acid is subjected to high heat of 800 degrees Celsius, high amounts of pressure, 20 atmospheric pressure units, and chemical catalysts, sodium hydroxide or sodium chloride.

39. Vanillin from eugenol is an artificial flavor because the high heat, high pressure and chemical catalysts are outside of what is considered a natural process for producing a natural flavor.

III. The Product's Ingredient List is Misleading and Prevents Consumers from Learning the Truth

40. Laboratory testing of the Product in the spring and/or summer of 2020 revealed it contains artificial flavors – vanillin, ethyl vanillin and piperonal. See 21 C.F.R. § 182.60 (listing vanillin and ethyl vanillin as "[s]ynthetic flavoring substances and adjuvants"); 21 C.F.R. § 172.515(b) (listing piperonal as a "Synthetic flavoring substances and adjuvants.")

41. Because the only natural vanillin is from the vanilla plant, vanillin from non-vanilla sources is artificial.[4]

---

[4] John B. Hallagan and Joanna Drake, The Flavor Extract Manufacturer's Association (FEMA), "Labeling Vanilla Flavorings and Vanilla Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake") (distinction between vanilla and non-vanilla flavors is discussed in regulatory correspondence and FDA advisory opinions)

42. The vanillin used in the Product is the artificial version and not from vanilla beans for several reasons.

43. First, the amount of vanillin was significantly greater than it would be if it were only present as *part* of the trace of vanilla extract included in the "Natural Flavor" ingredient listed.

44. Second, the vanillin was unaccompanied by the expected amounts of other aromatic compounds from the vanilla plant – methyl cinnamate, cinnamyl alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, 4-methyoxybenzyl alcohol (p-anisyl alcohol) and vanillic acid, even though these compounds were analyzed for.

45. Third, the absence of these compounds is indicative of a product which contains at most, a trace or de minimis amount of vanilla.

46. Fourth, there exists an inability to cost-effectively produce vanillin at scale through methods which can be considered natural processes.

47. Ethyl vanillin is a synthetic compound at least four times more potent than vanillin.

48. Heliotropin (piperonal) is an artificial flavor not found in vanilla that contributes "a sweet vanilla olfactory note as well as a sweet, aromatic, vanilla, and benzaldehyde taste."[5]

49. Defendant adds these artificial flavors because the amount of vanilla in the Product is de minimis and unable to provide any vanilla taste.

50. The ingredient list conceals these added artificial flavors as part of the generic "Natural Flavor" instead of using the required, specific, names – "vanillin" and/or "artificial flavor." 21 C.F.R. § 101.4(b)(1).

---

[5] C. B. Gnadinger, "Piperonal in Vanilla Extract." Industrial & Engineering Chemistry 18.6 (1926): 588-589.

**INGREDIENTS:** WHOLE ROLLED OATS, MILLED CANE SUGAR, CORN FLOUR, RICE FLOUR, VEGETABLE OIL (CANOLA AND/OR SAFFLOWER AND/OR SUNFLOWER OIL), ALMONDS, CORNSTARCH, WHOLE WHEAT FLOUR, BROWN RICE, HONEY, SALT, BARLEY MALT SYRUP, ==NATURAL FLAVOR==, ANNATTO (FOR COLOR), PURPLE CARROT JUICE (FOR COLOR). TURMERIC (FOR COLOR).

51. Even if reasonable consumers were to investigate the "Vanilla Flavored With Other Natural Flavors" statement on the front label by scrutinizing the ingredient list on the side, they would still be unaware that the Product contained artificial flavors.

52. Defendant conflates natural and artificial flavor, which deceives consumers.

53. Because the Product contains artificial flavor that "simulates, resembles or reinforces the characterizing flavor" of vanilla, the front label is required to state, "Artificially Flavored" instead of "With Other Natural Flavors." 21 C.F.R. § 101.22(i)(2); 21 C.F.R. § 101.22(i)(1)(iii).

54. "With Other Natural Flavors" is false and misleading because the Product's characterizing vanilla flavor is provided by artificial flavor.

55. The Product lacks the expected vanilla taste because added vanillin, ethyl vanillin and piperonal are not equivalent to the hundreds of compounds from the vanilla plant.

56. Reasonable consumers must and do rely on defendant to honestly disclose the source of the Product's flavor.

57. Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

8

58. Defendant sold more of the Product and at a higher price than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

59. Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

60. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.79 for boxes of 16 OZ (454g), excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

61. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA") as the aggregate amount in controversy is at least $5,000,000 and there is minimal diversity. 28 U.S.C. § 1332(d)(2).

62. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

63. Plaintiff Robert Gierwatowski is a citizen of Illinois.

64. Defendant Trader Joe's Company is a California corporation with a principal place of business in Monrovia, Los Angeles County, California.

65. Diversity exists because plaintiff Robert Gierwatowski and defendant are citizens of different states.

66.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here, as Plaintiff Robert Gierwatowski made the purchase in this district.

Parties

67.     Plaintiff Robert Gierwatowski is a citizen of Chicago, Cook County, Illinois.

68.     Defendant Trader Joe's Company is a California corporation with a principal place of business in Monrovia, California, Los Angeles County.

69.     Defendant operates at least 530 grocery stores nationwide and is known for its high-quality and globally sourced products.

70.     Plaintiff Robert Gierwatowski purchased the Product on one or more occasions, during the relevant period, at defendant's stores, between July and September 2020, at locations including but not necessarily limited to 3745 N Lincoln Ave, Chicago, IL 60613.

71.     Plaintiff bought the Product at or exceeding the above-referenced price because he wanted to buy a product with the qualities and attributes represented and relied upon what the label indicated and/or omitted.

72.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

73.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labeling is consistent with its composition.

Class Allegations

74.     The class will consist of all purchasers of the Product who reside in Illinois, Wyoming, Iowa and Indiana during the applicable statutes of limitations.

75.     Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

76. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

77. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

78. Plaintiff is an adequate representative because his interests do not conflict with other members.

79. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

80. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

81. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

82. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.
(Consumer Protection Statutes)</u>

83. Plaintiff incorporates by reference all preceding paragraphs.

84. Plaintiff and class members desired to purchase a product with the attributes and omissions as represented by Defendant's labeling and marketing of the Product.

85. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

86. Defendant misrepresented the Product through statements, omissions, ambiguities and half-truths.

87. Defendant intended that plaintiff and class members rely on these representations.

88. Plaintiff and class members were misled and/or deceived.

89. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability<br>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

90. Plaintiff incorporates by reference all preceding paragraphs.

91. The Product was manufactured, labeled and warranted to plaintiff and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and/or health-related attributes which it did not.

92. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

93. This duty is based on Defendant's outsized role in the market for this type of product.

94. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

95. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by regulators and consumers to its main office over the past several years regarding the Product.

96. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

97. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

98. Plaintiff incorporates by reference all preceding paragraphs.

99. Defendant had a duty to truthfully represent the Product, which it breached.

100. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

101. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

102. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

103. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

104. Plaintiff incorporates by reference all preceding paragraphs.

105. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

106. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

107. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

108. Plaintiff incorporates by reference all preceding paragraphs.

109. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 25, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com